## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| PETE TENVOLD, Individually and on Behalf of All Others Similarly Situated, | X ) ) ) |
| Plaintiff, | ) Civil Action No. _____ ) |
| v. | ) ) |
| FINISAR CORPORATION, MICHAEL HURLSTON, MICHAEL C. CHILD, ROGER C. FERGUSON, MICHAEL L. DREYER, THOMAS E. PARDUN, JERRY S. RAWLS, ROBERT N. STEPHENS, HELENE SIMONET, MUTATION MERGER SUB INC., and II-VI INCORPORATED, | ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATIONS OF** ) **SECTIONS 14(a) AND 20(a) OF** ) **THE SECURITIES EXCHANGE** ) **ACT OF 1934** ) ) ) ) |
| Defendants. | ) **JURY TRIAL DEMAND** ) X |

### CLASS ACTION COMPLAINT

Plaintiff Pete Tenvold ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Finisar Corporation ("Finisar" or the "Company") against Finisar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to II-VI Incorporated through its wholly-owned subsidiary Mutation Merger Sub Inc. (collectively "II-VI").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on December 28, 2018.  The Proxy recommends that Finisar shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Finisar is acquired by II-VI.  The Proposed Transaction was first disclosed on November 9, 2018, when Finisar and II-VI announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which II-VI will acquire all of the outstanding shares of common stock of Finisar for $15.60 in cash and 0.2218 shares of II-VI common stock (the "Merger Consideration").  The deal is valued at approximately $3.2 billion and is expected to close in the middle of 2019.

3.      The Merger Consideration does not properly compensate shareholders for their investment in Finisar.  Despite years of steady growth, the Board agreed to sell the Company for approximately $26.00 per share.  Yet an analyst recently set a price target for Finisar at $33.00 per share, and the Company's financial advisor implied a per share equity value as high as $33.37 for Finisar.

4.      Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Finisar management, as well as the financial analyses conducted by Barclays Capital Inc. ("Barclays"), Finisar's financial advisor.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive

Proxy to be disseminated to Finisar's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Finisar's shareholders.   In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

6.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Finisar.

7.      Defendant Finisar is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 1389 Moffett Park Drive, Sunnyvale, California 94089.  Finisar common stock trades on NASDAQ under the ticker symbol "FNSR."

8.      Defendant Michael Hurlston has been CEO and a director of the Company since January 2018.

9.      Defendant Michael C. Child has been a director of the Company since 2010.

10.      Defendant Roger C. Ferguson has been a director of the Company since 1999.

11.      Defendant Michael L. Dreyer has been a director of the Company since 2015.

12.      Defendant Thomas E. Pardun has been a director of the Company since 2009.

13.      Defendant Jerry S. Rawls has been a director of the Company since 1989. Defendant Rawls served as CEO from 1999 to 2008 and again from 2015 until January 2018. Defendant Rawls also served as Chairman of the Board from 2006 until January 2018 and as Executive Chairman from 2008 through 2015.

14.      Defendant Robert N. Stephens has been Chairman of the Board and a director of

the Company since 2005.

15.    Defendant Helene Simonet has been a director of the Company since 2017.

16.    Defendants Hurlston, Child, Ferguson, Dreyer, Pardun, Rawls, Stephens, and Simonet are collectively referred to herein as the "Board."

17.    Defendant II-VI Incorporated is a Pennsylvania corporation with its principal executive offices located at 375 Saxonburg Boulevard, Saxonburg, Pennsylvania 16056.  II-VI common stock trades on NASDAQ under the ticker symbol "IIVI."

18.    Defendant Mutation Merger Sub Inc. is a Delaware corporation and is a wholly owned subsidiary of II-VI Incorporated.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place, at least in part, and had an effect in this District; and (ii) Finisar is incorporated in this District.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Finisar common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

23.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of November 6, 2018, Finisar had approximately 117.3 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

    (i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    (ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

    (iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

    (iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

    (v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  The Board Agreed to Sell the Company for an Unfair Price

24.     Finisar designs and sells products that support optical communications, including optical cables, communication components, sensing components and optical transceivers.  Cisco Systems, Google, and Huawei are the Company's largest customers; other customers include Broadcom, Hewlett Packard Enterprise, and IBM.

25.     While the Company has been around for thirty years, financial results from the past five years demonstrate Finisar's stable and continuous growth.  For example, revenues have increased over 40%, as have gross profits.  Some years have been more profitable than others have, but overall the Company has experienced steady growth.

| (in thousands) | Fiscal Years Ended | | | | | |
|---|---|---|---|---|---|---|
| | April 29, 2018 | April 30, 2017 | May 1, 2016 | May 3, 2015 | April 27, 2014 | April 28, 2013 |
| Revenues | $1,316,483 | $1,449,303 | $1,263,166 | $1,250,944 | $1,156,833 | $934,335 |
| Gross Profit | $362,166 | $503,647 | $354,650 | $350,910 | $396,999 | $257,041 |
| Operating Expenses | $355,652 | $326,762 | $313,627 | $324,116 | $285,584 | $262,596 |
| Consolidated net income (loss) | $(48,286) | $249,346 | $35,193 | $11,887 | $111,537 | $(8,065) |

26.     This growth did not go unnoticed.  In December 2017, a Northland Capital Markets analyst reiterated a $33.00 per share price target for the Company, noting that Finisar had significant growth opportunities.  Specifically, the analyst stated: "We believe Finisar is well-positioned to manage pricing, volume and cost dynamics given its industry-leading scale and manufacturing capacity."[1]  Less than one year later, analysts at Zacks stated: "[W]e remain impressed with the inherent growth potential of" Finisar."[2]

27.     Despite the Company's growth prospects, the Board agreed to the Proposed Transaction on November 8, 2018.  The Merger Consideration is valued at $26.00 per share, 21% less than the price target set by Northland Capital Markets.  Even the analyses of the Company's own financial advisor illustrate that the Merger Consideration may not be high enough.  For example, Barclays's *Selected Comparable Company Analysis for Finisar* implied a per share equity value as high as $33.37, while the *Discounted Cash Flow Analysis* implied a per share equity value as high as $30.64.

**B.  Finisar's Officers Stand to Receive Benefits Unavailable to the Class**

28.     The Proxy acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

---

[1] Jayson Derrick, "5 Reasons Finisar Is An Analyst's Top Pick For 2018," Benzinga, December 29, 2017, https://www.benzinga.com/analyst-ratings/analyst-color/17/12/10967321/5-reasons-finisar-is-an-analysts-top-pick-for-2018 (last visited January 7, 2019).
[2] "Finisar to Gain From Enhanced Product Offerings, Risks Stay," Zacks, September 24, 2018, https://www.zacks.com/stock/news/324504/finisar-to-gain-from-enhanced-product-offerings-risks-stay (last visited January 7, 2019).

29.     Performance-based restricted stock units restricted stock units and stock options that have been awarded to and are held by Finisar's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount.  The treatment of these equity awards, in addition to benefits provided to executive officers through the Finisar Executive Retention and Severance Plan, will create a windfall for Finisar's executive officers that is unavailable to the common stockholders.  As demonstrated in the following chart, the executive officers of Finisar in total stand to receive up to $25.4 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Cash Severance | Equity | Perquisites/ Benefits | Tax Reimbursement | Total |
|---|---|---|---|---|---|
| Michael E. Hurlston | $2,205,000 | $6,502,875 | $54,182 | — | $8,762,057 |
| Joseph A. Young | $1,278,750 | $3,279,183 | $58,765 | — | $4,616,698 |
| Todd Swanson | $1,278,750 | $3,279,183 | $38,660 | — | $4,596,593 |
| Kurt Adzema | $1,237,500 | $2,714,926 | $54,849 | — | $4,007,275 |
| Julie S. Eng | $1,118,000 | $2,368,587 | $1,545 | — | $3,488,132 |

30.     In any event, the members of the Board and the executive officers stand to gain handsomely because of their equity holdings.  The executive officers and Board members will obtain $2.3 million from performance-based restricted stock units, $11.3 million from time-based restricted stock units, and $2 million from stock options, for a total of more than $15.7 million.

**C.  The Preclusive Deal Protection Devices**

31.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

32.     By way of example, section 4.03(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal.  Section 4.03(c) demands that the Company ceases and terminates all solicitations, discussions, or negotiations with any party concerning an acquisition proposal.

33.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be II-VI.  For example, pursuant to section 4.03(b) of the Merger Agreement, the Company must notify II-VI of any offer, indication of interest, or request for information made by an unsolicited bidder.  Thereafter, should the Board determine that the unsolicited offer is superior, section 4.03(e) requires that the Board grant II-VI three (3) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  II-VI is able to match the unsolicited offer because, pursuant to section 4.03(b) of the Merger Agreement, the Company must provide II-VI with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

34.     In addition, pursuant to section 7.03(a) of the Merger Agreement, Finisar must pay II-VI a termination fee of $105.2 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

35.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of II-VI's inadequate offer price.

### D.  The Materially Incomplete and Misleading Proxy

36.     The Individual Defendants owe the stockholders a duty of candor.  They must disclose all material information regarding the Proposed Transaction to Finisar stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

37.     On December 28, 2018, Defendants filed the Proxy with the SEC.  The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.  However, significant and material facts were not provided to Plaintiff and the Class.  Without such information, Finisar shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

38.     The Proxy discloses management-prepared financial projections for the Company that are materially misleading.  The Proxy indicates that in connection with the rendering of Barclays's fairness opinion, Barclays reviewed "financial and operating information . . . including financial projections of Finisar prepared by Finisar's management."  Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Finisar's management provided to the Board and Barclays.

39.     Notably, Defendants failed to disclose the financial projections for Finisar for fiscal years 2018 to 2021 for:

    (a)     Depreciation;

    (b)     Amortization;

    (c)     Cash Taxes;

    (d)     Capital expenditures;

      (e)      Changes in net working capital;

      (f)      Stock-based compensation expense;

      (g)      Capital Expenditures; and

      (h)      Any other line items used in the calculation of unlevered free cash flow.

The Proxy also fails to disclose the financial projections for Finisar for the terminal period for the above items, as used in Barclays' *Discounted Cash Flow Analysis*. This omitted information is necessary for Finisar stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Barclays's Financial Analyses*

40. With respect to the *Selected Comparable Company Analysis for Finisar,* the Proxy fails to disclose the individual multiples for each of the selected public companies for:

      (a)      EV/CY 2018E Revenue;

      (b)      EV/CY 2019E Revenue;

      (c)      EV/CY 2018E Operating Income;

      (d)      EV/CY 2019E Operating Income;

      (e)      EV/CY 2018E EBITDAS;

      (f)      EV/CY 2019E EBITDAS;

      (g)      P/CY 2018E Non-GAAP EPS; and

      (h)      P/CY 2019E Non-GAAP EPS.

The Proxy also fails to disclose whether Barclays performed any type of benchmarking analysis for Finisar in relation to the selected public companies.

41. With respect to the *Selected Comparable Company Analysis for II-VI*, the Proxy fails to disclose the individual multiples for each of the selected public companies for:

    (a)       EV/CY 2018E Revenue;

    (b)       EV/CY 2019E Revenue;

    (c)       EV/CY 2018E EBITDAS;

    (d)       EV/CY 2019E EBITDAS;

    (e)       P/CY 2018E Non-GAAP EPS; and

    (f)       P/CY 2019E Non-GAAP EPS.

The Proxy also fails to disclose whether Barclays performed any type of benchmarking analysis for II-VI in relation to the selected public companies.

42.     With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for each of the selected transactions for:

    (a)       EV/LTM Revenue;

    (b)       EV/NTM Revenue;

    (c)       EV/LTM Operating Income;

    (d)       EV/NTM Operating Income;

    (e)       EV/LTM EBITDAS; and

    (f)       EV/NTM EBITDAS.

The Proxy also fails to disclose whether Barclays performed any type of benchmarking analysis for Finisar in relation to the target companies.

43.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the individual inputs and assumptions utilized by Barclays to derive the discount rate range of 11.0% to 12.0%. The Proxy further fails to disclose the actual terminal year unlevered free cash flow metric to which the selected perpetuity growth rates were applied, as well as the range of implied terminal EBITDAS multiples resulting from the analysis. In addition, the Proxy fails to disclose

whether Barclays added back amortization in its calculation of unlevered free cash flow and, if not, the basis for not doing so. Finally, the Proxy fails to disclose how Barclays treated stock-based compensation expense (i.e., as a cash or non-cash expense).

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

44. The Proxy also fails to disclose material information concerning the sales process. For example, Finisar's management prepared a number of financial projections, yet most of those projections have not been disclosed in the Proxy. This includes the projections discussed as being provided to Barclays at the Board's May 9, 2018 meeting; the projections of Finisar with respect to fiscal years 2019 and 2020 as discussed at the Board meeting on June 12-13, 2018; the Finisar financial plan provided to II-VI on August 27, 2018; the projections discussed by the Board on September 27, 2018; the projections provided to Party D on October 5, 2018; and the projections provided to Party B on October 11, 2018. The Proxy further fails to disclose how the projections differed from each other and from the projections that were disclosed in the Proxy.

45. In addition, the Proxy notes that Barclays provided the Board with preliminary financial analyses on various occasions, yet those analyses were not disclosed. That includes the preliminary financial analysis of II-VI's May 3, 2018 proposal as presented to the Board on June 12-13, 2018; the preliminary financial analysis of Finisar and a potential transaction with II-VI as presented at the Board meeting on August 3, 2018; the preliminary financial analysis of a potential transaction with II-VI and potential synergies as discussed with the Board on September 4-5, 2018; the preliminary financial analysis of Finisar and a potential transaction with II-VI discussed with the Board on September 21, 2018; the preliminary financial analysis of Finisar and a potential transaction with II-VI as discussed with the Board on September 27, 2018; and the preliminary

13

financial analysis of Finisar and a potential transaction with II-VI as presented to the Board on October 30, 2018.

46.     The Proxy also fails to fully disclose information about potential conflicts of interest with Barclays.  Specifically, the Proxy notes that Barclays did not earn investment banking fees from Finisar or II-VI from January 1, 2015 to November 8, 2018.  Yet Barclays provides other services, including commercial banking and lending.   The Proxy does not disclose whether Barclays provided any other services to either Finisar or II-VI in the two years prior to providing its fairness opinion to the Board and, if so, the total fees earned from such services.

47.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.   And without all material information, Finisar stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

48.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

49.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC.  Indeed, as directors of the Company, they were required to do so.  The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

50.     Further, the Proxy indicates that on November 8, 2018, Barclays reviewed with the

Board its financial analysis of the Merger Consideration delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Finisar shareholders.  Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Barclays's financial analyses that has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

51.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

52.     Plaintiff incorporates each allegation set forth above as if fully set forth herein.

53.     Defendants have filed the Proxy with the SEC with the intention of soliciting Finisar shareholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

54.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Finisar, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

55.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

56.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Finisar's shares and the financial analyses performed by Barclays in support of its fairness opinion; and (iii) the sales process.

57.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Barclays reviewed and discussed its financial analyses with the Board during various meetings including on November 8, 2018, and further states that the Board relied upon Barclays's financial analyses and fairness opinion in connection with approving the Proposed Transaction.  The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

58.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class

have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Finisar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Finisar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

63.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to Finisar shareholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 9, 2019

**RIGRODSKY & LONG, P.A.**

*/s/ Brian D. Long*
_____
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

*Attorneys for Plaintiff*